FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 08, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ARON J.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,[1]<br><br>    Defendant. | No. 1:21-CV-03043-ACE<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 17, 22 |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 17, 22. Attorney D. James Tree represents Aron J. (Plaintiff); Special Assistant United States Attorney Lars J. Nelson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for an immediate calculation of benefits pursuant to 42 U.S.C. § 405(g).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff protectively filed an application for Supplemental Security Income on August 13, 2014, alleging disability since July 11, 2014.  Tr. 15, 103, 204-09.  The applications were denied initially and upon reconsideration.  Tr. 137-44, 148-53.  Administrative Law Judge (ALJ) Eric S. Basse held a hearing on March 10, 2017.  Tr. 15, 37-102.  The ALJ issued an unfavorable decision on December 11, 2017.  Tr. 12-29.  Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on November 15, 2018, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed for district court review of the case and in a stipulated remand order dated August 19, 2019, Magistrate Judge John T. Rodgers remanded the case for further administrative proceedings to hold a *de novo* hearing and issue a new decision. Tr. 684-85.  Judge Rodgers ordered the ALJ to (1) reevaluate Plaintiff's symptom allegations; (2) reevaluate the medical evidence; (3) reevaluate Plaintiff's residual functional capacity; and (4) if necessary, obtain updated vocational evidence, taking into consideration any updated testimony or evidence. *Id*.

On September 16, 2019, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further proceedings consistent with the stipulated remand order.  Tr. 687-91.  On October 27, 2020, Plaintiff appeared before ALJ C. Howard Prinsloo, [2] Tr. 660-83, who issued another unfavorable decision on December 3, 2020.  Tr. 639-59.  The Appeals Council did not assume jurisdiction of the case, making the ALJ's December 2020

---

[2] At the 2020 hearing Plaintiff requested a closed period of disability from his alleged onset date of July 11, 2014 until the date he returned to work, April 1, 2018.  Tr. 642.

decision the final decision of the Commissioner. Plaintiff filed this action for judicial review on March 12, 2021. ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Hum. Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant

bears the burden of establishing a prima facie case of disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On December 3, 2020 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 639-59.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the requested closed period at issue, from July 11, 2014 through March 31, 2018. Tr. 644.

At step two, the ALJ determined Plaintiff that during the requested closed period, Plaintiff had the following medically determinable impairments: degenerative disc disease, bilateral upper extremity ulnar neuritis, a personality disorder, an anxiety disorder, depression, and a learning disorder. Tr. 645.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments during the requested closed period that met or medically equaled the severity of one of the listed impairments. Tr. 645.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found that, during the period at issue, he could perform light work, with the following nonexertional limitations:

> [Plaintiff] can frequently finger. He can have no concentrated exposure to vibrations or hazards. He is limited to simple, routine tasks with short, simple instructions and only incidental contact with the public and superficial interaction with coworkers and supervisors.

Tr. 646.

At step four, the ALJ found that Plaintiff was unable to perform past relevant work. Tr. 651.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of cleaner (housekeeping); marker; and assembler (production). Tr. 652.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act during the period at issue. Tr. 653.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title XVI of the Social Security Act. The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated the medical opinion evidence; and (2) whether the ALJ properly evaluated Plaintiff's symptom complaints. ECF No. 17 at 2.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred by improperly evaluating the medical opinions of C. Donald Williams, MD, and C. Vaughan Bulfinch, DO. ECF No. 17 at 11-19. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted). If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

   1. Dr. Bulfinch

On July 24, 2014, C. Vaughn Bulfinch, DO, conducted a Physical Functional Evaluation on behalf of Washington State DSHS, and rendered an opinion of Plaintiff's level of functioning. Tr. 299-04. Dr. Bulfinch diagnosed Plaintiff with herniated nucleus pulposus (herniated disc) at C6-C7 on the left, blurry vision in left fields, numbness in both hands, and bilateral ulnar neuropathy. Tr. 300. Dr. Bulfinch opined Plaintiff had moderate[3] limitation in his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch due to a herniated disc; mild limits in his ability to walk, handle, reach, see and communicate due to blurry vision; and moderate limit in his ability to lift, carry,

---

[3] Moderate is defined on the DSHS form as "significant interference with the ability to perform one or more basic work-related activities." Tr. 300.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

handle, push, pull, and reach due to ulnar neuropathy. *Id*. He opined Plaintiff was limited to sedentary work and that duration of Plaintiff's limitations was "unclear, still evaluating." Tr. 302. Dr. Bulfinch indicated Plaintiff needed an MRI, and maybe orthopedic or neurosurgery referral depending on MRI results; and neurosurgery referral, with nerve conduction study for ulnar neuropathy. *Id*. He recommended treatment including neck brace, work limitation, MRI, pain medication, NSAIDs, nerve conduction study, and referral to neurosurgery. *Id*. The ALJ gave Dr. Bulfinch's opinion little weight. Tr. 650.

Plaintiff contends the ALJ erred in failing to address portions of Dr. Bulfinch's opinion and exam findings, incorrectly found Dr. Bulfinch's opinion was rendered prior to viewing any imaging or testing, and in discounting his opinion because Plaintiff returned to work at the end of the requested closed period. ECF No. 17 at 16-19. Defendant contends the ALJ reasonably rejected part of Dr. Bulfinch's opinion that conflicted with the record. ECF No. 22 at 15-17.

First, the ALJ gave Dr. Bulfinch's opinion Plaintiff was limited to sedentary work little weight because it was "not supported by Dr. Bulfinch's own exam findings from that day showing [Plaintiff] to have full strength and to be in no distress," and because Dr. Bulfinch's opinion "was rendered prior to viewing any imaging or testing, which . . . d[id] not support such significant limitations. Tr. 650. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228. However, an ALJ must also consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

Dr. Bulfinch's report is six pages long, and on page two of his report, he circled "attach chart notes"; he also circled "attach report" in the box instructing him to list all laboratory, range of motion and other diagnostic test results. Tr. 300. Dr. Bulfinch's treatment notes and exam findings that day are attached, and the seventh and last page is the July 11, 2014 CT angiogram report, read by a radiologist, showing the disc protrusion. Tr. 299-04, 305. While Dr. Bulfinch noted Plaintiff's strength in the upper and lower extremities was normal, he explained he also observed Plaintiff's "sensation numb to light touch in the ulnar distribution on the hands bilaterally, [and] severe pain in the paraspinous neck area with palpation of the neck." Tr. 303. Dr. Bulfinch observed "full [range of motion] in the shoulder and upper extremity joints," but also found that "strength is there to allow him to grasp objects but current decrease in sensation makes this somewhat difficult and I doubt his ability to do fine manipulation." *Id*. Dr. Bulfinch also explained that while Plaintiff was still waiting for an MRI, he had reviewed Plaintiff's July 11, 2014 CT angiogram of the neck, which showed a herniated disc at C6-C7; and the radiologist's report indicated "there is an eccentric disc protrusion to the left at C6-7 which may account for the patient symptoms." Tr. 299, 300, 305. The ALJ failed to discuss findings that supported Dr. Bulfinch's opinion, including his own exam findings, and concluded that Dr. Bulfinch did not review imaging that supported such significant limitations when Dr. Bulfinch explained his opinion was based in part upon imaging he reviewed, and which he included as an attachment to his report. Tr. 299, 305. The ALJ's conclusion that Dr. Bulfinch's opinion was entitled to little weight because it was not supported by his findings and because it was rendered prior to viewing any imaging or testing is not supported by substantial evidence.

The ALJ also erred in failing to address Dr. Bulfinch' opinion that due to decrease in sensation Plaintiff would have difficulty grasping objects and performing fine manipulation. Tr. 650; *see* Tr. 303-04. The ALJ is required to

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

evaluate every medical opinion. 20 C.F.R. § 416.927(b)-(c). Notably, in the Appeal's Council order remanding the case to the ALJ pursuant to the stipulated remand order of this Court, the Appeals Council explained that while the ALJ cited treatment records showing normal range of motion in Plaintiff's neck, other treatment records showed Plaintiff had neck problems; and that while the ALJ "noted Plaintiff could grasp objects . . . the record the [ALJ] cited also indicated that [a] medical provider 'doubt[ed] [the claimants] ability to do fine manipulation,' because of his decrease in sensation." Tr. 68-90. Despite this guidance, the ALJ failed to mention or discuss Dr. Bulfinch's opinion that due to decrease in sensation Plaintiff would have difficulty grasping objects and performing fine manipulation. Tr. 650; *see* Tr. 303-04.

      The harmless error analysis may be applied where even a treating source's opinion is disregarded without comment. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). An error is harmful unless the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). An ALJ could have reached a different disability determination, for part or all of the period at issue, based on Dr. Bulfinch's findings and opinion concerning Plaintiff's ability to perform fine manipulation due to loss of sensation, and therefore the failure to address Dr. Bulfinch's opinion in full was harmful error. As noted *supra*, Dr. Bulfinch provided a six-page report including his notes and findings upon exam and attached the CT report showing disc protrusion. Tr. 299-04.

      Defendant contends that Dr. Bulfinch did not explain what "doubt" about Plaintiff's ability to do fine manipulation meant, and as the ALJ restricted Plaintiff to frequent fingering there is no apparent conflict between the RFC restriction and Dr. Bulfinch's doubt about Plaintiff's ability to finger. ECF No. 22 at 17. While an ALJ may reject an opinion that does "not show how [a claimant's] symptoms

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

1   translate into specific functional deficits which preclude work activity," *see*
2   *Morgan,* 169 F.3d at 601, here the ALJ failed to mention or offer any analysis of
3   Dr. Bulfinch's opinion concerning ability to perform fine manipulation; and the
4   Court will not consider Defendant's *post hoc* rationalization. *See Orn v. Astrue*,
5   495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons
6   provided by the ALJ in the disability determination and may not affirm the ALJ on
7   a ground upon which he did not rely.").

8         The ALJ also gave Dr. Bulfinch's opinion little weight because Plaintiff was
9   able to return to work at the end of the requested closed period despite no
10  significant change in his functioning. Tr. 650. However, as Plaintiff points out he
11  testified that his neck problems later resolved after an unrelated surgery. ECF No.
12  17 at 16, 19. Plaintiff returned to work in 2018, almost four years after Dr.
13  Bulfinch's opinion, and without further analysis this was not a sufficient reason to
14  discount the opinion. While the ALJ concludes earlier in the decision that "the
15  medical records do not reveal any twelve-month period of disabling impairments,"
16  the ALJ also provided no explanation for this finding. Tr. 647. Without the ALJ
17  offering more than his stated conclusions, the Court is unable to meaningfully
18  review whether the ALJ's interpretation of the evidence is reasonable. *See Brown-*
19  *Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *Embrey v. Bowen*, 849 F.2d
20  418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting
21  the found conflict to permit the Court to meaningfully review the ALJ's finding).

22        Further, in July 2014, DSHS had Dr. Wayne Hurley conduct a review of Dr.
23  Bulfinch's opinion/report to clarify the duration of Plaintiff's limitations. Tr. 315-
24  16. Dr. Hurley explained that Dr. Bulfinch "is correct duration is not obvious at
25  this point" but that "under the circumstances, giving [Plaintiff] some benefit of the
26  doubt, assess duration as 12 m[onths]"; Dr. Hurley explained that "this assumes
27  status with absence of specialist care as has so far been denied [Plaintiff due to]
28  economic factors out of his control." Tr. 316. Plaintiff's ability to return to work

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

in 2018 was not a specific and legitimate reason supported by substantial evidence to discount Dr. Bulfinch's 2014 opinion.

*2. Dr. Williams*

In March 2015, Dr. Williams, a psychiatrist, conducted a consultative examination and rendered an opinion on Plaintiff's level of functioning.  Tr. 440-45.  Dr. Williams diagnosed Plaintiff with specified personality disorder with avoidant and schizotypal features; unspecified anxiety disorder; unspecified depressive disorder; attention deficit disorder by history; and disorder of written expression.  Tr. 444.  Dr. Williams noted Plaintiff was able to carry out short and simple instructions and was able to carry out more detailed instructions during the mental status examination; he opined, however, that Plaintiff's "ability to maintain attention or concentration for extended periods is markedly limited by history, and [Dr. William's] impression during the interview was that continuing at [a] task for more than 10 or 15 minutes would be very difficult for him." Tr. 445.  He opined Plaintiff "is not able to sustain an ordinary routine without special supervision," and "not able to work in coordination with or proximity to other people at this time, because of his perceived (probably accurate) limitations in regard to his cervical spine." *Id*.  Dr. Williams noted, however, that "without more detailed information it is not possible to rule out somatoform disorders or indeed a delusional disorder involving his health." *Id*.

Dr. Williams opined Plaintiff was markedly limited with regard to his ability to complete a normal workday and workweek without psychologically based symptoms, and in his ability to interact appropriately with the general public. *Id*. He opined Plaintiff was likely to display behavioral extremes as "certainly his history is consistent with that, and his adult coping skills appear to be very limited." *Id*. He opined that Plaintiff's ability to maintain socially appropriate behavior was moderately to markedly limited, he "demonstrated an inability of at

least marked severity regarding his adaptive capacity, and that "he [had] not demonstrated an ability to set realistic goals or make independent plans." *Id*.

The ALJ gave some weight to the portion of Dr. Williams' opinion that Plaintiff could perform simple routine tasks, because it was supported by Dr. Williams' exam findings. Tr. 650. The ALJ otherwise gave his opinion little weight because Plaintiff was able to maintain concentration during the evaluation, "the fact that routine treatment notes document no significant problems with [Plaintiff's] ability to maintain concentration during appointments," and because "this portion of the opinion along with the social and behavioral limitations opined by Dr. Williams is inconsistent with the fact that [Plaintiff] returned to work at the end of the requested closed period despite no change in his functioning." Tr. 650. The ALJ failed to provide citation to the record, here or elsewhere in the decision, however, to support his conclusion that routine treatment notes demonstrate Plaintiff was able to maintain attention. Tr. 650. Upon independent review of the record, the Court finds he was regularly observed to be anxious and treatment records also show him as agitated, emotionally labile, and angry/inappropriate at appointments during the period at issue. *See, e.g.*, Tr. 303, 319, 331, 369, 444, 539, 541, 893. The ALJ's conclusion Dr. Williams' opinion was due little weight because Plaintiff was able to maintain concentration during the evaluation and during appointments is not supported by substantial evidence, and this was also not a specific and legitimate reason supported by substantial evidence to discount Dr. Williams' opinion.

Further, the ALJ used the same reasoning to discount the opinion of Dr. Williams as was found insufficient in regard to Dr. Bulfinch's opinion, *supra*; the ALJ discounted Dr. William's 2015 opinion because Plaintiff returned to work in 2018. *See* Tr. 650. In 2015, however, Dr. Williams noted Plaintiff's report "he is concerned about his health, and also is preoccupied with his failed work history and failed educational history," and he also "report[ed] no successful sustained

1   employment in a full-time job." Tr. 444.  For the same reasons discussed in
2   relation to Dr. Bulfinch's opinion, Plaintiff's ability to return to work in 2018 was
3   not a specific and legitimate reason supported by substantial evidence to discount
4   Dr. Wiliams' 2015 opinion.
5       The ALJ failed to provide specific and legitimate reasons supported by
6   substantial evidence to reject the opinions of Dr. Bulfinch and Dr. Williams.
7   **B. Plaintiff's Symptom Claims**
8       Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's symptom
9   testimony.  ECF No. 24 at 11-16.  It is the province of the ALJ to make
10  determinations regarding a claimant's subjective statements.  *Andrews,* 53 F.3d at
11  1039.  However, the ALJ's findings must be supported by specific, cogent reasons.
12  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant
13  produces medical evidence of an underlying medical impairment, the ALJ may not
14  discredit testimony as to the severity of an impairment merely because it is
15  unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.
16  1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting
17  the claimant's testimony must be "specific, clear and convincing."  *Smolen v.
18  Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834
19  (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify
20  what testimony is not credible and what evidence undermines the claimant's
21  complaints."  *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).
22      The ALJ concluded Plaintiff's medically determinable impairments could
23  reasonably be expected to cause the alleged symptoms; however, Plaintiff's
24  statements concerning the intensity, persistence, and limiting effects of those
25  symptoms were not entirely consistent with the medical evidence and other
26  evidence in the record during the period at issue.  Tr. 647.
27
28

*1. Limited Treatment/Failure to follow Treatment recommendations*

The ALJ discounted Plaintiff's symptom complaints because he had little treatment and failed to follow or comply with treatment recommendations. Tr. 647-49. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina v. Astrue,* 674 F.3d 1104, 1113-14 (9th Cir. 2012), *superseded by regulation on other grounds*. However, when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to seek or participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Moreover, disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Social Security Ruling 16-3p also instructs that an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2016 WL 1119029, at *8 (March 16, 2016).

Here, the ALJ discounted Plaintiff's symptom complaints because he had little treatment aside from medication, and because he because he did not follow through with recommendations for physical therapy. Tr. 647-48. In its 2019 order to the ALJ for further proceedings consistent with the stipulated remand order of this Court, however, the Appeals Council explained that the ALJ had failed to address Plaintiff's reasons for not attending physical therapy, including that the

clinic he was referred to was booked out too far, and that Plaintiff felt he was "not physically capable of doing that." Tr. 689 (citing Tr. 441, 531). Despite this guidance, in the current decision the ALJ concluded only that "while he was given a referral to physical therapy, records from the following month show that he and not followed through with this." Tr. 648 (citing Tr. 436). This rationale is insufficient, and the ALJ failed to follow the remand order to reevaluate Plaintiff's symptoms claims. On this record, without further discussion or analysis, Plaintiff's failure to follow through with treatment recommendations including physical therapy was not a clear and convincing reason to discount Plaintiff's symptom claims.

In terms of mental health, the ALJ also discounted Plaintiff's symptom claims because he had "no significant treatment during the period at issue." Tr. 649. The ALJ must consider all the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan,* 246 F.3d at 1207-08 (9th Cir. 2001). Here, the ALJ noted that during a psychological consultative evaluation in early 2015 with Dr. Williams, plaintiff reported a history of learning difficulties, depression, and anxiety, but he also denied current psychiatric treatment. Tr. 649 (citing Tr. 440-45). The ALJ noted Plaintiff's reports of increased depression due to homelessness and not working, but that Plaintiff also reported he was not receiving any treatment. Tr. 649 (citing Tr. 553). The ALJ concluded that Plaintiff's lack of mental health treatment was notable "given the fact that he is able to attend appointments for his physical complaints." Tr. 649. In 2016, however, a provider noted Plaintiff was not "in any mental health system and it does not appear there is an option for counseling or evaluation." Tr. 549. In 2018, Plaintiff reported to the same provider that he had sought mental health care at Central Washington Comprehensive Mental Health, but "they are always full." Tr. 874.

Providers have indicated there was a mental health or psychosomatic component to his symptoms during the period at issue. *See, e.g.*, Tr. 329, 480, 485, 553-54. In 2015, for example, Dr. Asriel noted Plaintiff's "quality of life ha[d] deteriorated dramatically over the last 1 ½ years"; he noted Plaintiff was homeless, had not been able to work "since all this began," and had "lost [his] fiancé and infant son." Tr. 553-54. Dr. Asriel explained Plaintiff had a "rather bizarre constellation of symptoms that he blames on a neck problem" and "he is seeking a surgical solution to this. He certainly appears to have a mental illness as a strong contributor to this problem, but [he] is not under any therapy." Tr. 554.

Plaintiff reported he was unable to access the mental health care available to him with his state insurance, and records show he was homeless during the period at issue. On this record, the Court finds there is a question of whether he had practical access to mental health services. There is also evidence that any failure to seek or participate in mental health was attributable to his mental impairment(s) during the period at issue. For these reasons the fact that Plaintiff had no significant mental health treatment during the period at issue was therefore not a clear and convincing reason to discount Plaintiff's symptoms.

In the 2019 stipulated remand order, this Court ordered the ALJ to reevaluate Plaintiff's symptom allegations along with the medical evidence and Plaintiff's RFC. Tr. 684-85. As discussed *supra*, the ALJ harmfully erred in failing to discuss Dr. Bulfinch's opinion in full, and he failed to provide specific and legitimate reasons supported by substantial evidence to discount the medical opinions. In terms of Plaintiff's symptom claims, the ALJ discounted Plaintiff's symptom claims because he failed to follow treatment recommendations, without discussion of his reasons for failing to do so, despite being instructed by the Appeals Council to do so to comply with the stipulated remand order of this Court. *See* Tr. Tr. 689. On this record limited treatment and failure to follow treatment

recommendations were not clear and convincing reasons to discount Plaintiff's symptom claims.

   *2. Other Reasons*

   The ALJ gave other reasons to discount Plaintiff's subjective symptom claims. As the case is being remanded for immediate benefits on other grounds, the Court declines to further address this issue.

## CONCLUSION

   The ALJ's decision is not supported by substantial evidence and not free of harmful error. Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits. ECF No. 17 at 19. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the record is adequate for a proper determination to be made and further development is not necessary.

   The Ninth Circuit has set forth a three part standard for determining when to credit improperly discounted evidence as true: (1) the record has been fully developed and further administrative proceedings would serve no purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence in question; and (3) if the improperly discredited evidence were credited as true the ALJ would be required to find Plaintiff eligible for benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

   In this case, all three parts of the standard are met. The record has been fully developed in terms of available medical records during the requested closed period from July 14, 2014 through April 1, 2018, and further proceedings are not necessary. As discussed *supra*, the ALJ failed to provide legally sufficient reasons

to reject the medical opinion evidence; the ALJ also failed to properly assess Plaintiff's symptom complaints, despite being given a second opportunity to do so. Therefore, the second prong of the credit-as-true rule is met. The third prong of the credit-as-true rule is satisfied because if the medical opinions were credited as true, the ALJ would be required to find Plaintiff disabled. Finally, the record as a whole does not leave serious doubt as to whether Plaintiff was disabled during the period at issue. *See Garrison*, 759 F.3d at 1021.

Moreover, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). Here, Plaintiff filed for benefits in 2014, was homeless during the period at issue, and had untreated mental health concerns and barriers to obtaining treatment. The case was already remanded once by this Court. Considering the delay from the date of the application, harmful error by the ALJ, and failure to discuss relevant evidence supporting disability, all described *supra*, it is appropriate in this case for this Court to use its discretion and apply the "credit as true" doctrine pursuant to Ninth Circuit precedent.

As such, the Court remands the case for an immediate calculation of benefits.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for an immediate calculation of benefits.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED February 8, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE